And our final case for this morning is United States v. Samuel Bradbury. You're going to have to help me with your name pronunciation. Good morning, your honors, counsel. May it please the court, my name is Aaron Wegrin. Wegrin. Yes, that's silent Z. On behalf of the defendant appellant, Samuel L. Bradbury. The district court erred below when it instructed the jury that acting maliciously is the same as acting intentionally for purposes of section 844E. This erroneous jury instruction stripped Mr. Bradbury of his sole defense at trial, his lack of a subjective malicious intent. The district court's instruction was essentially lifted, copy and pasted, from this court's decision in an arson case. But the district court did not adequately evaluate the Supreme Court's decision in Alanis and its statement. Look, I don't get anything out of maliciously. Isn't the problem that he's threatening people? Your honor, Mr. Bradbury was charged at trial. I mean, it's funny in a way, but we the 765 anarchists, part of a much larger plot to kill cops in the local area. Now this is highly objectionable behavior. I don't know where malice gets, I don't get the function of the word. Maybe I just don't understand what maliciously means. Your honor, I agree that the statute is somewhat unique, and this case is somewhat unique in that Mr. Bradbury was charged with one count with two separate theories of liability. First, that he willfully made a threat, which I believe goes to your point. That I understand. He was acquitted of that theory. Second, he was charged with maliciously conveying false information. Your main point was that maliciously isn't a synonym for the word intentionally. That you could intentionally conduct an act of kindness if you wanted to. You help some poor homeless person on the street and get a meal. Or you could intentionally do something that's terrible, like suggesting that people go out and kill some police officers and judges. But they're not the same thing. Correct, your honor. Our position is that malicious, to define maliciously as intentionally in the disjunctive as the district court did, impermissibly deludes the government's burden of proof. Right, because there are many, many things. Intentionally is a big, broad umbrella, and part of the things under that umbrella are malicious, but other parts are not. Correct. Go ahead. Trial counsel objected to the district court's definition, specifically requested that the district court adopt a definition of maliciously that would incorporate this notion of a bad harm or an evil intent. Intending to cause injury or harm, right? Correct. So, I guess the problem, the district judge, in his post-trial order, in essence says, I think we're meaning essentially the same thing. I understand how you can parse the language so as to sever from intentionally any reference to damage or injury that will result the way this was written. But nobody argued the case that way, at least that I could tell. I didn't see any suggestion that the government was trying to convict on the theory that you're fearing the jury would have followed, that any intentional act would be enough. And the argument all along in the district judge is saying, look, you make these kinds of threats, there's going to be a reaction. It's going to disrupt, injure, damage people, scare the daylights out of the named targets of such threats. And that's the theory of the conviction. To respond to your honor, to the first point regarding how the case was argued, as we stressed in our reply brief, the prosecution hammered on the term intentional repeatedly in arguing Mr. Bradbury's guilt to the jury. It didn't say maliciously, repeatedly, it said he is guilty because he acted intentionally. But don't they mean he acted intentionally to scare these people, to put out there this plan, supposed plan, we've gathered enough thermite and explosives that we intend to not only kill those two pigs and any others that get in our way, etc., etc., I mean, he knows he's saying very inflammatory things. I think it's important to keep in mind that he posted these messages on his Facebook page, which was not publicly accessible. I understand. But do we know how many friends he had? There are people out there who have like 10,000 friends on Facebook. So it's not necessarily an intimate group. I do think there's upper limit. To answer your honor's question, there's nothing in the record that I'm aware of that indicates how many. All right, so maybe 4,000. I mean, there are people who have a very large number of friends, friends, using the word loosely. In this case, the only reason this post got to law enforcement's attention is because... So one of the friends took some screenshots, right? Maybe not such a friend. Well, she's not such a friend. She's an acquaintance from eighth grade. Right, that's what I mean. And she doesn't immediately report it to law enforcement. She waits around 24 hours. She talks to co-workers who she gives the post to, who ultimately is the one. So it's a rather circuitous way that this comes to the attention. Which just goes to show that maybe your best argument is not that he kept it within some small, intimate circle. Now, I think your argument about intentionally not meaning to say... Defense, as I recall, at one point just said to the judge, don't even define it. Just tell them that the statute says maliciously. The jury probably has some reasonable understanding of that word. It's not some esoteric English word that no one hears. And there's some wisdom to that, not defining the term maliciously. As this court's recognizing cases like United States v. Hatfield, sometimes simply adding more words and defining more terms only serves to frustrate the purpose of jury instructions. So I think in this case it would have been totally appropriate for the district court to allow the jurors to rely on their ordinary understanding of the word maliciously. This isn't a Latin term. Jurors are familiar with the concept. To get back to the point of where the prejudice and the harm arises, I think it's important to stress that given the legal error as we've articulated in our briefs, it's the government's burden to prove beyond a reasonable doubt to this court that it can find that any reasonable juror would have convicted. He's so specific in this post. That's another thing I think that's... I mean, if he's intentionally being malicious, I don't know if I can say that. He's talking about no less than six police cars, the courthouse, Judge Les Meade, whose wife gets terrified about all of this, now Justice Rush. Maybe she was still a judge when he wrote this or he just didn't know. Now Chief Justice. Well, there you go. Should have said fewer, not less. Your Honor, I mean... Because it's a well-written, his document is well-written, but that's a grammatical error. Your Honor, I agree. When I first read this post, I took it as almost something out of a law school exam. It's so specific. It's over the top. I mean, it's almost to the point that how could you believe that there's really 50 people in suburban or rural Indiana willing to die? He named his friend in the post as a suicide. He's going to be the fall guy. This is Ant, right? Ant. Yeah. He tags that person and then says, oh, yeah, you're a suicide candidate that we're just going to use as a pawn. It looks like a joke, actually, doesn't it? I agree with you, Your Honor, and the audience responses, the other comments, indicate that his friends understood it as a joke. They write, LOL. I don't think if they had interpreted it as a true threat they would be laughing out loud. I thought some did react, though. Are you serious? Are you, in essence, I don't want to go this far. Hey, man, take this down, you're saying. There were certainly people who reacted negatively to the post, and in order to respond to those people, Mr. Bradbury specifically went into his post and made comments within a few minutes saying, look, this is satire. This is just made to get you to think. Don't take this. None of this is true, and tried to reassure people. I see that I'm into my rebuttal time, and I'd like to reserve it. If you'd like to reserve it, that's fine. Mr. Holler. Thank you. Good morning, Your Honors, and may it please the Court. How old is this fellow, Bradbury? How old is he? Yeah. I believe he was 22 or 23 at the time, so he'd be 25 or 26 now. Isn't there a way to handle something like this, to go to the guy and say, look, you can't do this stuff, you can't post this. It may be a joke in your mind, probably is a joke in your mind. Ant is nothing more than a fall boy. We do have plans to use him in a suicide strike. But wouldn't you warn a person before you prosecuted him for this kind of infantile behavior? Your Honor, I think we have different interpretations of this. I think that's why I think the officers testified. They went, they didn't know how to interpret it, they went into his bedroom, and they found four pounds of thermite, which they'd never found before. And he threatened to blow up a police car with thermite, making a very specific threat against a very specific police officer who had previously arrested his girlfriend, and they took it seriously. No, that kind of threat I understand. Well, that's what this threat was, Your Honor. But that's not the Facebook page. Yeah. That is the exact threat. Does he talk about thermite? It includes thermite. It does mention thermite. That's true. I'm sorry to interrupt, Your Honor. No, you're right. Yes. He does have the thermite. I missed that. Judge Posner, I mean, our view of this is he starts out discussing, and if you read his chats, if you read his chats with Gonzalez, he's angered, he's going to jail, his girlfriend has broken up with him because he believes the officer has turned this person against him. And then, yeah, this spills out and this spirals out into something bigger. But it's a big threat. It's a big malicious conveyance of false information. So what would have been the harm to have charged the jury that it had to be malicious? I am very disturbed by the government's theory that the word intentional is a synonym for the word malicious because it just seems to me that's wrong. Now, whether not charging malicious, particularly with respect to speech, I can easily imagine torching somebody's house is such a drastic thing to do that maybe malicious is just inherent in it. But speech is something we need to be careful of. I agree with that, Your Honor. And I think we've explained why we believe that the defendant's claim that bad intent or evil intent should be involved is improper. And it's the same as the Kelly example. It's the question of if a defendant says, in my heart of hearts, I believe I'm an anti-abortion protester and I believe that it's going to be good to disrupt abortion clinics. And so I'm going to call up every day a different Planned Parenthood clinic and say, I'm bombing your clinic today, and that disrupts everything and that stops all the abortions from occurring, that that's a good. I don't have evil in my heart. I intended to do it. I intended to make that statement. But I don't have evil intent. I'm not acting with an unjust purpose. And that was the objection. But he is at least saying in the abortion context, I intend to create this disruption. And then that's, I mean, I think the government makes a reasonable point when you say these hoaxes that turn schools inside out, that turn clinics inside out, that in this instance impose such fear on the judges and the police officers. Those are bad things. But just plain old intent that you intended to say it seems insufficient. Okay. So I have two basic points to that, Your Honor. And the first one is it very much depends on what the meaning of the words convey false information mean. That's what it means. If convey false information, if the defendant is right, that convey false information just means speak, then he's right. We need to include some evidence of bad intent here. But the government's position is what convey false information means, and more importantly, leading into my second point, what the jury would have understood from the way this case was tried, what convey false information means is cause you, cause the reader, cause the speaker or cause the listener to believe that this may be true. Convey false information. So if I tell you a joke, if I jokingly tell you that, you know, Judge Easterbrook is boarding the next flight with a bomb in his carry-on and you laugh or don't laugh or whatever you do, but you don't believe me, I haven't intentionally conveyed false information to you. His position is I have. I spoke. I conveyed false information. My position is no. You didn't believe me. You didn't convey false information. So what jury instruction, if not the instruction on maliciousness, what jury instruction conveys to this jury all the additional things you're talking about? My point, Your Honor, is that. Is it in the jury instruction? Nope. No, it's not in the jury instruction. All right. Well, that's a problem, isn't it? No. Well, we could have clarified the definition of convey false information. That's right. If you're leaning on that to supply what I feel is the missing ingredient, then I need to see it's there. Well, my two points would be I think the more natural reading of convey false information is the one I have. I don't understand false information. He's making threats. But you're saying threats that he doesn't intend to carry out, so it's false in the sense of. He's making threats. That's what he's doing. He's making threats. This could frighten people. That's correct. So that's the crime. Why do you have to talk about either intent or malice? I think, I mean, the answer is because. Well, that's where all this Ice Cube and Beatles stuff comes in. You know, there's plenty of hip-hop that's pretty fun. Let me ask you, Mr. Holler, would the government have been uncomfortable with the definition that the district judge talked about in the order afterwards, that is to act maliciously means to act intentionally despite a likelihood the damage or injury would result or with deliberate disregard, et cetera? It seems to me that's what the government argued. I mean, that is my, the harmless. That's a very awkward instruction to give to a jury. Very awkward. All I can say at the end of the day, Your Honor, is the jury was told from day one, the very beginning of the government's opening statement, this isn't a joke, this isn't a satire, this isn't literature. That's the end of their closing statement. The one statement that my colleague puts out, where he tries to say this was intentional, is a misreading of what was said. There's an ellipsis in the middle of his quote on page one of his reply brief. And what's in the ellipsis? What we said is, after we said there's no question these acts are intentional, he wanted to cause damage. He wanted to cause injury. He's talking to Brandon Timberlake, one of his buddies. You heard from Mr. Haugen, Mr. Timberlake is a member of the anarchists. He has a tattoo. And he says, my boy Anthony has been getting shit from cops for posting about killed cops, so after talking to him, I'm taking it to the next level. So that's what we meant by intentional. That's what the jury would have thought it meant, to intentionally convey false information, was to intend that the cops are going to believe this, the cops are going to react the way they thought. What is the false information? The false information is the threat. It's the false claim that I have a bunch of thermite. But that's not false information to make a threat. There's nothing false information about a threat. The jury acquitted him essentially. Suppose I say, I'm going to kill the next person I see. There's nothing false about that. Well, the statement. Stating an intention to do a bad thing. Where's the falsity? The false information is the jury found he didn't intend to do it. He didn't intend to kill the next person he saw. He said, I intend to kill. He didn't intend to carry it out. Right. No, I think there's some falsity in that he's trying to make them think he's prepared to take this thermite he has and blow up the next police car, whereas he has no such intention. He realizes that socially acceptable people don't do that, although he doesn't seem to be too good on that front. But, yeah, I can see the falsity issue. Our position, Your Honor, is that to convey false information is to cause another to believe that false information is true. Our position is that's how the jury would have read it. The jury, his view, the defendant's view. So is this a harmless error argument? Because I'm also looking ahead. The statute talks about whoever blah, blah, blah, maliciously conveys false information. It doesn't say intentionally conveys false information. So there's got to be some difference. Congress chooses the word maliciously. Right. Well, you can convey false information knowing. Our position is if you convey false information knowing it to be false, if I tell you a joke that Judge Easterbrook has a bomb in his luggage and is getting on the next plane and I intend you to laugh and you believe it and you call O'Hare and you call Judge Easterbrook and you create a huge ruckus, our view is I have unintentionally conveyed false information to you. It's not true. I didn't intend you to take it as true. But I did convey false information to you. I did cause you to believe it. And so you do need the word maliciously there. Well, you're saying you could use the word intentionally. Well, you could say what we said, which is intentionally or with deliberate disregard. I mean, I don't want to leave out this whole other prong here, and the jury could have convicted based on that. We may be fighting over here about something that wasn't even really an issue. We talk about that in a footnote to our brief. There is the whole deliberate disregard that even if he didn't intend it, if he said it under such circumstances and knew and deliberately disregarded that this was going to cause those kinds of reactions, he could be convicted as well. So you have to have that component as well. I'm struggling with the false information. So he says, for example, we intend to incinerate and destroy no fewer than six police cars. So presumably this is false. But it's not the falsity that's disturbing about it. It's the threatening. It's the fear that it induces. Right? I mean, I don't know that I could. It doesn't matter whether it's false, whether you. This is the statute. Well, if it's true, then we would want people to disseminate that information. We would want to know that there's a plot afoot to do this. So, I mean, that's the point of the falseness. If there is, in fact, true information and there's someone out there who is truly intending to bomb a courthouse, I would think we would want that information disseminated. So the falseness is we're going. I mean, this court spoke about it in Jones, but the false information. You want it disseminated? Well, you want law enforcement to know so that you can divert it, I think, is what you mean. And in this instance, you know, he's saying these wildly bad things, hoping that everybody will be very disrupted, but not actually intending to do the thing. Which we think is exactly what the purpose of the statute is. We think the jury got that. We don't think that the jury had any belief that they could convict him based on a joke or a satire. We think the instructions were correct and to the extent that there could have been a clarification. The clarification he asked for would not have been the correct one, and any error would have been harmless. Couldn't you have prosecuted him just for making threats, threats of mayhem? Isn't that enough to prosecute someone? No, that's what this statute is for. That's more or less what 844E says. That was the statute we selected, Your Honor. We believed it to be the most appropriate one. We believe this to be the most appropriate statute to charge him with. I don't know if there would have been. Isn't there a statute that forbids making violent threats? Well, that's what this statute says. Mr. Holler, what would you think if we said, in essence, the district judge, it would have been better to instruct the way the defense is proposed after, at least after the trial, with this intentionally intended results, the damage and harm, but that it didn't cause any prejudice or harm in this case? At least on the intentional portion, I don't know that I have any objection to it, but I do note there is still the deliberate disregard. Oh, right. The deliberate disregard seems to me perfectly valid. It's not challenged here, and it's quite reasonable. It's like the criminal recklessness, right? But I'm a little uncomfortable if I really parse the language as a lawyer about whether I can stop after intentionally draw a line and then say or with deliberate disregard. But I also, it just seems to me like an artificial way to read this particular instruction, given the way the case was tried. Given, I mean, Your Honor, I think that the defendant raised that in the post-trial motion, and then has largely abandoned it on appeal in our view. So I don't know that it's necessarily proper for the court to opine on that. I have not given that enough attention, I think, to really give you a position that, yes, the government embraces and endorses that. I can't tell you that right now. How would you explain to a jury, if you want to say that this business about killing and so on is false information, how do you explain that to a jury? How do you say to a jury, well, you know, they said they were going to kill all these people, but actually they didn't mean it? I don't think that there was any debate. Well, how do the jurors react to that? They say, oh, well, it must be a joke. I don't think there was any debate. That's why they don't understand why they weren't charged with threatening violent conduct, rather than this business about telling lies about their intentions to kill people. But isn't that the thing that he was acquitted on? He was not, the jury did not find that he willfully made a threat. They found that he maliciously conveyed a false information. He hadn't made a threat? Yeah. What did they think it was? A joke? Because it was on Facebook? Is that the idea? I think that we think that there are two possibilities. One is that the judge instructed that on the threat it had to be willful, and the two possibilities of that are he intended it to be taken as a hoax, intended to cause police officers to react. Why did he have to tell them a threat has to be willful? Why did he tell them that? I believe that's an intentional act. If you threaten someone, it's intentional. Why do you have to say willful? Why are they throwing in all these words? And, you know, malicious is not a word in common use today. Well, it's in the statute, Your Honor. I don't know. I can't take it out of the statute. It is in the statute. That's true, Mr. Pollard. We know you didn't write it. Nonsense in the statute. We tried to define it. The defense didn't even want us to do that. It's not your fault. Thank you very much. Thank you, Your Honor. We would ask your pardon. Mr. Wagram. Just a few final points in response. The harm here is in that however the case was argued to the jurors, when the jurors get back to the deliberation room, they see the instruction defining maliciously as intentionally, and they're allowed to disregard essentially all of Mr. Bradbury's defense about his lack of a subjective malicious intent. When they look at the instruction, they see all we need to find is that he spoke intentionally, and that's where we believe the harm comes in. And given that error on appeal, we don't think it's the appropriate role for this court to weigh into the conflicting evidence that the jurors could consider on a, you know, So unless the panel has any further questions, I'll rest on my brief. All right. Thank you very much. And I believe you took this case at our request. We appreciate that very much as well. Thanks as well, Mr. Holler. We'll take the case under advisement. The court will be in recess. Thank you.